May it please the Court, my name is Andrew Huff. I am counsel for the appellant Christopher Schoenthal. This has been a fairly complicated case. I'm the second defense attorney on it. There were a lot of motions, two psychological reports and evaluations done. But the appeal involves, it's a relatively simple appeal. It has two parts. The first is that the Court used its discretion in denying Mr. Schoenthal's motion to withdraw his guilty plea. And the second part of the argument is that the sentence, 170 months, there was no basis for such a long sentence given the paucity of Mr. Schoenthal's criminal record, almost no criminal record. He had conviction for a bad check. And also given the fact that through a sexual evaluation, sex offender evaluation that was conducted, he was found to be no danger to society or to even have any abnormal sexual proclivities. So in the absence of any kind of record that would support such a long sentence, the sentence is unreasonable. The motion to withdraw the guilty plea, that is the core here that I'd like to concentrate on today. During that motion, I presented two witnesses, two sworn witnesses, Gary Lipner and Jody Perfect. Both of these witnesses testified under oath. And Mr. Lipner testified that he had spoken with the co-defendant's wife and that she had told him that she and Mr. Schoenthal were going to go down with him. And I'm not quite sure how that would affect Schoenthal's defense. So could you poke me on that? Yes. Basically the argument is that this is evidence that wasn't in the mixed when he pled guilty. I understand. But how would that have a material effect on the decision to plead guilty? Because he's admitted that he had a zillion images, that he downloaded the stuff onto his hard drive and onto computer disks and all that stuff. So the fact that somebody squealed on him or the fact that they, out of spite or whatever, wanted to take him down too, why would that make a difference? Well, the difference is you have to look at it in combination with the testimony of the second witness, Jody Perfect. And she testified that there was a period of time when Mr. Schoenthal and his wife were having a domestic dispute. Oh, when Schoenthal moved. Exactly. And he moved in with the co-defendant and there was an opportunity for the co-defendant at that time to use his computer because it was a faster, more powerful computer. He took his computer with him to download that stuff. How does that, I think the issue that Judge Reimer is trying to get to perhaps is the issue that he admitted the conduct that constituted the crime at the time, not just in the plea colloquy. He admitted it from the outset. And so I don't understand what could possibly get in the way or what new evidence could undo that. That was the second part of the argument with regard to the motion. And that was kind of the most controversial part and the part that the Court zeroed in on. And the Court didn't expend any time analyzing or even acknowledging the testimony of the two sworn witnesses. It zeroed in on the second part of the argument, which was an explanation for why, after having admitted this conduct to various parties, why the defendant would be backing away from that now and claiming innocence essentially. Well, maybe more precisely for me, why any of the other facts would detract if there were a trial from the fact that he had repeatedly admitted the criminal conduct. So how could anything else have made a difference? How could it be material in that way? I think the second part of the argument was basically that during the course of the two evaluations, the two psychological evaluations that were conducted on Mr. Schoenthal, both Dr. Hyatt, the federal forensic psychologist, and Dr. Scolati, the person who did the sexual offender evaluation, they both noted that one of Mr. Schoenthal's primary characteristics was a desire to please people he was with, to go along with what they were doing, to change himself so that he could become a person they liked. And during the argument, I presented and pointed the Court to those portions of those two reports that noted these things and presented that as an explanation for why he would admit to conduct that he was now saying he did not do and that someone else did and that he had been set up. So that was that portion of the argument. That's the evidence there. And obviously — Pardon me, counsel. When did the two doctors come to this conclusion with respect to the guilty plea, before or afterwards? I think both evaluations were done after the guilty plea, Your Honor. But those were the two parts of the argument. And the judge misconstrued the second part of the argument, the district court. He felt that, in fact, we were arguing that his previous defense counsel had told him to lie, and that wasn't the argument at all. The evidence was presented as a way to explain why the defendant would go along with these proceedings without proclaiming his innocence, as he later did. So the Court misconstrued that second part of the argument and said, you presented no evidence that defense counsel, his previous defense counsel, would tell him to lie. So I'm denying your motion. And then he didn't — the Court didn't address at all the first part of the argument, which I think was the far more important part, which is the testimony of two witnesses saying it looks like he may have been set up and there was an opportunity for his co-defendant to have used his computer to download this stuff onto the — onto his computer. And the — you know, the point of the argument wasn't to try to prove his innocence during the argument. It was to try to say there was enough, in terms of new evidence or changed circumstances, to get it to the jury. And that, of course, never happened. If there are no more questions, I'll save my remaining time for rebuttal. Good morning, Your Honors. May it please the Court. My name is Marcia Hurd, and I'm an AUSA in Montana. I handled this case in the Court below as well. I think that the Court has really zeroed in on the problem with the motion to withdraw the guilty plea. And that problem is that Christopher Schoenthal has constantly and repeatedly said, I downloaded and saved child pornography. But why isn't the psychological evidence new in the sense that it brings to the table for the first time an assertion that he is — has a compliant kind of personality, that he would admit to things just to please the officers who were there, and not necessarily because he had actually done something? And that, coupled with evidence that his co-defendant had the opportunity and the motive to also set him up, why isn't that enough to create new evidence that ought to allow the withdrawal of the guilty plea? I guess two answers to that. The first is this allegation of new evidence of the co-defendant setting him up. From the very beginning, Christopher Schoenthal knew that the ICE agents came to his house because his friend Jesse Laws said, well, not only do I have child pornography, they asked him, where did you get it? Well, I got it from Christopher Schoenthal. So they walk over to Christopher Schoenthal's house and go in and talk to him, and he freely admits at that point. But the question is whether he freely admits. I guess that's really the question, what the new evidence theoretically goes to, is whether, in fact, this was freely admitted in the normal sense that you and I would use it, or whether it was a product of a psychological peculiarity. Exactly. With the first part of this, the whole evidence about Jesse Laws, he'd known that from the beginning, that that's how the case came to be. It was certainly in the discovery. He knew what his connection was with Jesse Laws. So there was no new evidence there. As Judge Reimer pointed out, he knew he'd been to Jesse's house when he and his wife had had a fight, but we can't even tell if that was in 2005 or 2004. And the reality is this case was charged as a continuing course of conduct beginning in 2003 and ending when they came, that there were files on his computer for a lengthy period of time, even before that summer several-day separation. And so any evidence regarding Jesse Laws was not new evidence to him. In fact, in the sexual offender evaluation that he had after his guilty plea, his comment was, the evaluator asked him, how did you get busted? And the comment was, the marshals caught one of my friends and he accidentally let it slip and they came and talked to me. So that was certainly information that he had. The only information that could allegedly be new was the discussion that occurred after his change of plea about him potentially being not competent to stand trial and then having the evaluation done by the Bureau of Prisons. But the evaluation from the Bureau of Prisons, as well as the sexual offender evaluation done by Dr. Scalati, have both made a part of this record for you. And never in there is there any statement by either of these evaluators that this defendant was unable to tell the truth because of his wanting to please, or that somehow or another he had made up these allegations because he wanted to please. What Dr. Scalati's report indicates, and that was done, the guilty plea was on February 6th of 2006. Dr. Scalati interviewed him on March 28th, so approximately a month and a half later. And Mr. Schoenfeld at that time gave a completely detailed description of what it was he did, which mimicked very much what he said in the beginning to ICE and what he said to the court, talking about, I first downloaded child pornography in 2003. I saw a clip of sex with a six- or seven-year-old girl. I used the search words child porn or kiddie porn. I wanted to see what stupid people were doing with it. It was all curiosity. I got sick from some of the images. I don't know, I had maybe 30, but not more than 100. I thought I'd gotten rid of it, but I ended up saving some on a CD without realizing what it was until it was too late. There is absolutely no discussion in the sexual offender evaluation done in March that was completed in May that indicates that Dr. Scalati thought his psychological condition had anything to do with making this up. And then if you look at the evaluation that was done by the Bureau of Prisons, that actually started in June of 2006. He actually was court-ordered there in June of 2006, and it ended in July of 2006. He indicated in that evaluation, his quote was that he lied to the investigators because he didn't want to be late for a job interview, so I made a bunch of stuff up to get them out of the house. I just wanted to get them out of my hair. And then says, I'm not guilty because I didn't do it. And this is in response to three different times when he has detailed exactly how it is that he did it. And there is nothing within this evaluation that has been completed by the Bureau of Prisons that indicates in any fashion that his psychological underpinnings would cause him to make a false confession, which is kind of what he's alleging. He was diagnosed as being adjustment disorder with depressed mood and a personality disorder not otherwise specified. I mean, many of us act in ways in which we want to please people. We all want to be liked by people. But it doesn't mean that you're going to admit in specific detail to a criminal offense, and especially a criminal offense like receipt and possession of child pornography, that isn't accurate. So I don't believe there is any new information contained in either of these reports that supports his claim of innocence or of new evidence. Counsel, you mentioned three detailed relations. We have one to the investigators. We have one to Dr. Scarlatti.  The other one is that his change of plea. He changed his plea in February of 2006. So the first one was July 1st of 2005, when he talked to the ICE investigators who came to his house. The second is March 28th, 2006, when he pled guilty. And then the third is to Dr. Mike Scarlatti in the sexual offender evaluation that was part of the plea agreement. And that occurred on March 28th of 2006. So there are three different times in there when he details everything that is actually corroborated by what we found on his computer and what we found in terms of the rest of the investigation. This is a classic buyer's remorse. This is a classic I pled guilty and now I just need to back off from this. There is absolutely no new evidence in this case that would allow him to withdraw his guilty plea. Unless there are other questions, I think I've covered the two issues that are present in that. If the court would like to hear argument about the reasonableness of sentence. Okay. I don't think we have any questions. Okay. Thank you. Mr. Huff? Yes, Your Honors. Just very rapidly, as the prosecutor, Ms. Hurd, was noting, there was some doubt as to when the visit to the co-defendant actually occurred. So I just wanted to point out the fact that it could have occurred depending on when that visit, the date of that visit is pinned down prior to the time when the material was downloaded onto the computer. With regard to the detailed descriptions, part of my argument was that both at the change of plea and in Scalatti's report, the defendant exhibits a marked lack of detailed knowledge about his alleged crimes. In other words, during his change of plea, the court had to basically drag out his answers from him, suggesting numbers, suggesting what was going on in the pictures, and the defendant just kind of agreed as he went along. What is interesting about the change of plea is that, unlike most other changes of plea, you have a long colloquy where the defendant talks through his conduct. In this change of plea, that didn't happen. The defendant's admission of his conduct was simply, I did download and possess child pornography. It was a rote recitation of the statute. And then the details came out as the court pulled them out of him. And even as it was doing that, he exhibited a lot of unsureness about the numbers of images and so forth. So part of my argument below is that he seems to have exhibited throughout a lack of detailed knowledge of his alleged conduct. Thank you. Thank you. Counsel, I'll leave you for your argument, and that is this argument will be submitted. And I think we'll next hear argument in the United States versus Senate chamber. Thank you. Thank you.
judges: Rymer, Graber, Bea